# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

CARLOS VASQUEZ,                    )
                                   )
    Plaintiff,               )
                                   )
v.                                 )          CAUSE NO.: 1:15-CV-398-TLS
                                   )
CATERPILLAR LOGISTICS, INC., EA    )
STAFFING SERVICE, INC.,            )
                                   )
    Defendants.              )

## OPINION AND ORDER

Presently before the Court are Defendants EA Staffing Service, Inc. (EA) and Caterpillar Logistics, Inc.'s (Caterpillar) Motions for Summary Judgment [ECF Nos. 30, 34] and EA's Motions to Strike [ECF Nos. 42, 46]. The Defendants seek summary judgment on all counts and request that the Court strike the Plaintiff's Response to the Defendants' Motion for Summary Judgment [ECF No. 39], the Plaintiff's filing entitled "Introduction" [ECF No. 40], the Plaintiff's Motion to Deny Caterpillar Logistics Inc. and EA Staffing's Summary Judgment Responses [ECF No. 44], and the Plaintiff's Disclosures of Disputed Facts [ECF No. 45]. This Opinion and Order disposes of all of the parties' outstanding motions.

## PROCEDURAL HISTORY

The Plaintiff, Carlos Vasquez, filed his complaint [ECF No. 1] on December 27, 2015, alleging unlawful discrimination by the defendants on the basis of race and sex, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*., as amended; color, in violation of 42 U.S.C. § 1981; and age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (ADEA).

Prior to bringing his action in federal court, the Plaintiff filed a charge against Caterpillar with the Equal Employment Opportunity Commission (EEOC), alleging discrimination on the basis of race, color, and age. He received a Notice of Right to Sue on November 28, 2015, and thus exhausted his administrative remedies, as required by 42 U.S.C. § 2000e–5(f)(1), against Caterpillar. (Compl. at ¶ 10.)

On February 16, 2016, Defendant EA filed a Motion to Dismiss [ECF No. 6] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as to the Plaintiff's claims against it under Title VII and the ADEA, arguing that the Plaintiff never named EA as a respondent to the EEOC charge and that, therefore, the Plaintiff had not exhausted his administrative remedies against EA as required by law. The Court granted EA's motion to dismiss on April 19, 2016 [ECF No. 18], which left only a 42 U.S.C. § 1981 race discrimination claim pending against EA.

Discovery closed on January 20, 2017. Until February 10, 2017, the Plaintiff was represented by counsel, but he has since proceeded pro se. On March 27, 2017, Defendant EA filed a Motion for Summary Judgment [ECF No. 30], Defendant Caterpillar filed a Motion for Summary Judgment [ECF No. 34], and the Plaintiff moved for an Extension of Time to respond [ECF No. 29]. The Court granted the Extension [ECF No. 38] allowing the Plaintiff until June 23, 2017, to respond.

On June 23, 2017, the Plaintiff responded to both of the Defendants' motions for summary judgment in a single filing [ECF No. 39]. On July 5, 2017, the Plaintiff filed an uncaptioned pleading titled "Introduction" [ECF No. 40], which appears to be a supplement to his June 23 response. On July 7, 2017, Defendant EA filed its Reply [ECF No. 41] to the Plaintiff's Response as well as a Motion to Strike [ECF No. 42] both the Plaintiff's Response to the Defendants' Summary Judgment Motions and the Plaintiff's Supplement to his Response.

EA argues as to both of the Plaintiff's filings that the Plaintiff failed to comply with Local Rule 56-1(b), which requires the Plaintiff, as the non-movant, to submit a statement of disputed facts. EA further argues that the Plaintiff's Supplement is outside of the summary judgment record because it was filed twelve days past the deadline and without leave of court. Defendant Caterpillar filed its Reply [ECF No. 43] on July 12, 2017, in which it also requested that the court strike both of the Plaintiff's filings for the reasons stated in EA's Motion to Strike.

On July 26, 2017, without leave of Court, the Plaintiff filed a Surreply [ECF No. 44] and a Disclosure of Disputed Facts [ECF No. 45]. Defendant EA filed an Amended Motion to Strike [ECF No. 46], requesting that the Court also strike both of these filings as being outside of the summary judgment record.

## FACTUAL BACKGROUND

This case arose out of the termination of the Plaintiff from his position at Caterpillar. The Plaintiff, a 54-year-old African-American male, began his employment with Caterpillar in October 2014, when he was assigned to Caterpillar by Mark Stayer, an EA employee. At the time of the assignment, the Plaintiff understood that EA had no control over the length of his assignment. (Pl. Resp. Ex. 3, ECF No. 39-3.) From October 20, 2014, through December 5, 2014, the Plaintiff performed the "Kitter" job while waiting for his certification to become an "Order Picker." Caterpillar employee Bill Logsdon supervised the Plaintiff, and the Plaintiff's primary responsibilities as a "Kitter," were to put kits of parts (e.g., ignition coils, air filters, different kinds of brackets, etc.) together so that the kits could be placed in containers and shipped to another Caterpillar facility for assembly.

From December 5, 2014, until February 18, 2015, the Plaintiff performed the "Order Picker" job. Logsdon continued to supervise the Plaintiff as an Order Picker until January 20, 2015, at which point Caterpillar employee Luis Araiza assumed supervision of the Plaintiff. As an Order Picker, the Plaintiff's primary responsibilities were to operate a reach truck and an order picker truck to gather parts from different sections of the warehouse and place them into a container so that they could be shipped to another Caterpillar facility for assembly. Araiza and Logsdon were the Caterpillar employees primarily responsible for evaluating the Plaintiff's job performance. Both reported to Caterpillar manager Tom Ropp.

Araiza and Ropp made the decision to end the Plaintiff's assignment with Caterpillar. On February 17, 2015, Araiza communicated this decision to Stayer at EA, who then emailed John Preston, another EA employee, regarding the necessary documentation for the Plaintiff's termination. EA then communicated this decision to the Plaintiff. After the Plaintiff's termination, EA offered to seek a new assignment for the Plaintiff. (Pl. Resp. Br. 2, ECF No. 39.)

### A.      Caterpillar's Assertions

Caterpillar asserts that it ended the Plaintiff's assignment because he violated Caterpillar's PPE (personal protective equipment) policy, did not respond well to corrective feedback, had low productivity, and exhibited poor quality work. (Cat. Br. 3, ECF No. 35.) Specifically, Araiza determined that the Plaintiff (1) violated Caterpillar's PPE policy by failing to wear steel-toed boots to work on February 17, 2015; (2) was argumentative with Araiza about a mispick attributed to the Plaintiff; (3) had 22.7 mispicks per 10,000, which was fourth worst in the entire operation; (4) argued with team lead Dan Bushor regarding his workload and un-scanned tags; (5) picked a G2 kit without stamping, highlighting, or logging it in, which was

contrary to the standard work process; and (6) failed a standard work audit due to tags that were not highlighted. (Cat. Br. Ex. 1 ¶ 6, ECF No. 35-1.) According to a "Stamp # Search" that was run on February 17, 2015, the Plaintiff had mispicks on January 13, 2015, January 22, 2015, February 10, 2015, and two errors on February 11, 2015. (Pl. Resp. Br. Ex. 3, ECF No. 39-3.) These entries were variously recorded on January 14, 2015, January 23, 2015, February 12, 2015, and February 13, 2015. (*Id.*)

### B.    The Plaintiff's Assertions

The Plaintiff disagrees with the Defendants' characterization of the reasons for his termination. He instead alleges that the mispick records were forged and that the errors he supposedly committed were setups. Specifically, the Plaintiff denies any deficiency in his productivity or performance and argues that the mispicks and un-scanned tags attributed to him were either the fault of other employees or intentionally precipitated by the manner in which he was trained and the specific tasks he was assigned to perform.[1] He also states that he was, in fact, wearing his steel-toed shoes at all times on February 17, 2015, contrary to Araiza's claim.[2]

The Plaintiff further alleges that on February 18, 2015, EA associate John Preston terminated the Plaintiff's employment with Caterpillar after the Plaintiff's supervisor at

---

[1] For example, the Plaintiff claims that the team lead, Dan Bushor, failed to show up to train him on a specific kit and then shipped the unstamped, unverified kit after the Plaintiff had punched out for the night, resulting in a error being incorrectly attributed to the Plaintiff. (Pl. Supp. 4, ECF No. 40.) He also argues that his pick numbers were low only because he was assigned to areas with more time-consuming picks and that his training was intentionally delayed. (Vasquez Dep. 56:18–57:3, 79:17–80:8, 81:12–82:2, ECF No. 36-1; Pl. Resp. Br. 3, ECF No. 39; Pl. Supp. 19, ECF No. 40.)

[2] While the Plaintiff claims that the "tip" Araiza received regarding his alleged lack of appropriate footwear was anonymous, Caterpillar claims that Conan Hawley, a Caterpillar employee, reported the violation to Araiza, precipitating a meeting with the Plaintiff that resulted in the Plaintiff being sent to retrieve the appropriate footwear. (Pl. Resp. Br. 3, Araiza April 10 Decl. ¶¶19–24, ECF No. 39-3.)

Caterpillar informed "his superiors . . . as well as EA Staffing management, that [the Plaintiff] was 'not someone who we would want to hire onto the company' and that 'we would be better off cutting tires [sic] with [the Plaintiff] at this point.'" (Compl. ¶23.) Although the Plaintiff was not informed of his termination until February 18, 2015, Preston signed an "offboarding" checklist (Pl. Resp. Ex. 3, ECF No. 39-3) dated February 16, 2015, indicating that the Plaintiff had returned his pass key, badge, and punch card, even though the Plaintiff remained in possession of those items as of that date[3] and worked his shift on February 17, 2015.

The Plaintiff alleges that Caterpillar and EA unlawfully discriminated against him based on his age, color, sex, and race. Specifically, the Plaintiff alleges that Logsdon, Araiza, Bushor, Stayer, Ropp, Preston, and Doug Brunton (Caterpillar Human Resources employee) discriminated against him. The Plaintiff also believes that the fact he had just applied for health insurance and that he threatened to report a legal violation both contributed to his termination.

The Plaintiff alleges that Logsdon discriminated against him when "he was not proactive in asserting his authority to ensure that [he] was trained in a timely fashion" (Vasquez Dep. 74:14–16, ECF No.36-1), but he admitted that Logsdon never made any discriminatory comments to him (*Id.* 77–78) and that he was sufficiently trained to perform his job (*Id.* 25:19–22, 21:20–22, 45:3–22, 108:9–109:10).

The Plaintiff alleges that Ropp discriminated against him because Ropp "was contacted for an OK to advance [his] termination," but the Plaintiff admits that Ropp also did not make any discriminatory comments to him. (*Id.* 76:3–77:21.)

---

[3] The Plaintiff states that the Defendant asserts that the date discrepancy was a clerical error, but the Plaintiff argues that the discrepancy demonstrates a conspiracy on the part of the Defendants to assign him different termination dates for tax purposes. (Pl. Supp. 3.)

The Plaintiff alleges that Araiza discriminated against him because Araiza was "more alienated and distant from [him] after Araiza attempted to speak to the Plaintiff in Spanish and realized that the Plaintiff did not speak Spanish," but the Plaintiff admits that Araiza never made any discriminatory comments to him. (*Id*. 93:22–94:9.)

The Plaintiff alleges that Brunton discriminated against him because "Brunton was present . . . when an offer was made by the company to the employees to vie or avail themselves of the medical plan . . . and within six days, [the Plaintiff] had been terminated and [his] medical insurance did not go through," although the Plaintiff admits that Brunton never said anything personally to him and that his contact with Brunton was minimal. (*Id*. 78:9–79:16.)

The Plaintiff alleges that Bushor discriminated against him because he did not expedite Vasquez's training and did not show up to train Vasquez on a G2 kit on February 12, 2015. (*Id*. 79:17–80:6, 81:12–83:19.) The Plaintiff also believes that Bushor assigned him more laborious tasks than non-African Americans. (*Id*. 89:12–17.) The Plaintiff alleges that on one occasion, Bushor was engaged in a conversation with the Plaintiff and others about rock and roll when he commented that the Plaintiff would probably remember about doo-wop because he was old (*Id*. 85:13–86:19.) The Plaintiff admits that Bushor did not make any other comments that he considered to be discriminatory. (*Id*. 86:20–87:2.)

The Plaintiff alleges that Stayer and Preston discriminated against him because they "failed in their advocacy role as [the Plaintiff's] employer at EA Staffing to give [the Plaintiff] a chance to receive a balanced assignment list." (*Id*. 179:4–7.) The Plaintiff also states that Stayer "failed to correct misperceptions, and he generated emails . . . he did not clarify misstatements and did not contribute at all to clarity in the situation that occurred on the 17th in any way." (*Id*. 189:4–11.) The Plaintiff alleges that Stayer was "in the loop and privy to" the communications

surrounding the Plaintiff's termination and that Stayer and Preston "didn't try to go to bat for

[the Plaintiff] for [him] to keep [his] job at Caterpillar." (*Id.* 198:24–25; 205:20–24.)

The Defendants argue that the Plaintiff has not submitted any evidence of discrimination

and cannot point to any derogatory or discriminatory comments made by any of these

employees, with the possible exception of Bushor's comment in reference to doo-wop music.

Moreover, the Defendants argue, the Plaintiff's claims of discrimination based on the fact that

certain employees were "in the know" and failed to take steps to prevent his termination fail

because such conduct, or lack thereof, is not actionable.

## STANDARD OF REVIEW

Summary judgment is appropriate if the facts, supported by materials in the record, show

that there is no genuine issue as to any material facts and that the moving party is entitled to a

judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no

rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the

evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead

to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe

v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary

judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the

movant must provide a "Statement of Material Facts" that identifies the facts that the moving

party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare

pleadings alone but instead must use the evidentiary tools listed in Rule 56 to designate specific

material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). Per Local Rule 56-1(b), a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." According to Fed. R. Civ. P. 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." *United States v. 5443 Suffield Terrace, Skokie, Ill*., 607 F.3d 504, 510 (7th Cir. 2010). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the oft stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary

judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).


## EVIDENCE SUBMITTED BY THE PARTIES

### A.    Defendant Caterpillar's Evidence

Caterpillar has placed into the summary judgment record selected pages of the Plaintiff's deposition (Cat. Br. Ex. 1, ECF No. 36-1), a declaration by counsel for Caterpillar, Jason Torres, (Cat. Br. Ex. 2, ECF No. 36-2), and a declaration by Araiza, dated March 24, 2017 (Cat. Br. Ex. 3, ECF No. 36-3). Torres' declaration in relevant part states: "To date, Vasquez has not responded to Caterpillar's interrogatories or requests for the production of documents" and attaches Caterpillar's discovery requests.[4] Araiza's declaration details the Plaintiff's alleged performance issues and attaches an email from February 17, 2015, documenting the reasons he believed the Plaintiff should be terminated.


### B.    Defendant EA's Evidence

EA has placed into the record selected pages of the Plaintiff's deposition (EA Br. Ex. A, ECF No. 30-1), along with two exhibits from that deposition and a declaration by Mark Stayer (EA Br. Ex. B, ECF No. 30-2). In relevant part, Stayer's declaration states:

> On February 17, 2015, I received a phone call from Vasquez' supervisor informing me of Caterpillar's decision to terminate his assignment. [] To document the end of Vasquez' assignment at Caterpillar, I sent an email to John Preston to document his termination date, the reason provided, and the documentation needed from Caterpillar.

---

[4] The Plaintiff denies this accusation, but he produces no evidence to the contrary. The Court notes that the Plaintiff was represented by counsel throughout discovery.

## C.     The Plaintiff's Evidence

In his Response to the Defendants' motions, the Plaintiff attached his own declaration (Pl. Br. Ex. 1, ECF No. 39-1), a document entitled "Motion to Dismiss" (Pl. Br. Ex. 2, ECF No. 39-2), and sixty-six pages containing various other exhibits (Pl. Br. Ex. 3, ECF No. 39-3), the table of contents for which can be found at the end of the Plaintiff's Supplement [ECF No. 40]. In his filings, the Plaintiff refers to portions of his deposition, which he claims support his contentions, but he does not include copies of the relevant pages. This information is thus not part of the summary judgment record before the Court, and the Court is unable to evaluate it. The Plaintiff's Declaration essentially restates his complaint allegations and the arguments made in his Response. The admissibility of this declaration is questionable because many of the statements are speculative, consist of self-serving statements with no other factual basis in the record, or are inferences and opinions not based on first-hand knowledge.[5] Exhibit 2 appears to be a motion filed in an administrative proceeding regarding Caterpillar's alleged violation of Map-21 (implemented at 29 C.F.R. § 1988), which is not an action asserted in the Plaintiff's

---

[5] Under Rule 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

Complaint and thus, not relevant to the Court's determination. Exhibit 3 contains twenty exhibits, marked A–T. Relevant and admissible exhibits include training materials, the Plaintiff's error record, two emails dated February 17, 2015, documenting the reasons for the Plaintiff's termination, the offboarding checklist signed by Preston, and an affidavit dated April 10, 2015, that Araiza executed in an administrative proceeding. The remainder of the exhibits primarily concern allegations brought in administrative proceedings but not included in the Plaintiff's Complaint and are therefore irrelevant to the Court's review.

## ANALYSIS

### A.     Race Discrimination Under Title VII[6]

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of his race. 42 U.S.C. § 2000e–2(a)(1). Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). When the plaintiff does not present her

---

[6] The Court granted Defendant EA's Motion to Dismiss [ECF No. 28] as to the Plaintiff's claims for discrimination on the basis of race and sex in violation of Title VII and for discrimination based on age in violation of the ADEA on April 19, 2016, because the Plaintiff failed to name EA as a respondent in his EEOC charge. Thus, the Court will consider these causes of action only as to Caterpillar in this Opinion and Order.

argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment on discrimination claim under the direct method of proof). In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu v. Cook County*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

The Plaintiff has not invoked the *McDonnell Douglas* burden-shifting method. Here, then, the question before the Court is whether the evidence as a whole would permit a reasonable factfinder to conclude that the Plaintiff was dismissed from his position at Caterpillar on the basis of his race. Such evidence may include:

> (1) Suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)).

The Plaintiff admits that none of the employees against whom he alleges discrimination ever made a racially discriminatory comment to him. He also proffers no evidence that anybody at Caterpillar behaved discriminatorily towards other African-American employees. The Plaintiff alleges that other African-American employees were more often assigned to more difficult, lower tag-count jobs and that African-American employees were consistently being removed from the warehouse due to supposed mistakes. (Pl. Supp. 19.) But, other than his own statements, the Plaintiff has no evidence that this was the case or even that any specific incident actually occurred. *See Porties v. Gen. Elec. Co.*, No. 02 C 3995, 2004 WL 1151594, at *7 (N.D. Ill. Apr. 28, 2004) (failure to "identif[y] any specific examples, which are supported by admissible evidence, to support [a] claim" that similarly-situated white employees were treated more favorably than the African-American plaintiff fatal to argument). For example, the Plaintiff did not identify the other African-American employees supposedly subjected to this treatment or obtain their affidavits. He did not identify how many workers were needed at each job each day. He did not identify with any specificity the proportion of time he or others spent doing different jobs. Nor did he demonstrate the proportion of African-American employees discharged during downsizing as compared to non-African-American employees. There is simply no evidence other than the Plaintiff's bare assertions from which a reasonable trier of fact could find that African-American employees were more often allocated to the less desirable jobs or were being systematically terminated. "Summary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chi.*, 863 F.3d 645 (7th Cir. 2017) (quoting *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016)).

The Plaintiff also has not identified a similarly situated employee outside of his protected class, much less produced evidence that such employee was treated more favorably. "A similarly situated employee is one whose performance, qualifications, and conduct were comparable in 'all material respects.'" *Tank*, 758 F.3d at 809. A court looks at all the factors that are relevant within the context of the case, which may include whether the employees held the same job description, were subject to the same standards, or had comparable experience, education, and qualifications, as long as the employer took these factors into account when making the personnel decision in question. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

In his Surreply, the Plaintiff alleges that Bushor was a similarly situated employee. (Pl. Sur. 9.) However, Bushor held a supervisory position with regard to the Plaintiff, and he therefore cannot be a similarly situated employee.

The Plaintiff also alleges that Larry Gregory was a similarly situated employee who was permitted to keep his job. (Pl. Supp. 16.) Other than claiming that Gregory held the same job and performed the same duties as the Plaintiff, the Plaintiff cannot demonstrate comparability in all material respects as to performance, qualifications, and conduct. The factors that Caterpillar claims were relevant to the Plaintiff's termination were that the Plaintiff did not produce high quality work, was argumentative with his supervisors, and did not wear the proper PPE. There is no evidence that Gregory had mispicks; there is no evidence that Gregory ever had altercations with his supervisors; and there is no evidence that Gregory ever failed to wear appropriate PPE. In fact, the only bad conduct the Plaintiff attributes to Gregory is an altercation involving a pizza shop employee—conduct that neither affected Gregory's performance nor violated Caterpillar's safety policies. In short, there is no evidence that Gregory was a similarly situated employee

outside of the Plaintiff's protected class who would not have been terminated had he engaged in conduct comparable to the Plaintiff's. *See Lawson v. Diehl Machines, Inc.*, No. 3:98-CV-194, 1999 WL 325064, at *8 (N.D. Ind. Apr. 16, 1999) ("Accordingly, the court cannot find the fact that [the defendant] handled two separate and distinct disciplinary infractions differently as indicative of pretext."). Drawing all inferences in favor of the Plaintiff, there is no admissible evidence in the record that the people he identified—Larry McGregor and Dan Bushor—had similar productivity issues or otherwise engaged in any conduct comparable to the Plaintiff's but were permitted to keep their jobs. Moreover, it appears that the Plaintiff's actual allegation regarding why Gregory was treated differently is that he had a personal connection with Bushor. (Pl. Supp. 16.) Although this is a perhaps questionable method for assigning job duties or making employment decisions, it is not one that is actionable under Title VII.

Furthermore, because Caterpillar has produced evidence of legitimate reasons for the Plaintiff's termination, the Plaintiff must come forward with evidence that creates a genuine issue of material fact as to whether Caterpillar's stated reasons were a pretext for race discrimination. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (rejecting the "proposition that if doubt can be cast on any part of the employer's process, then the trier of fact may deem the whole explanation a pretext for discrimination") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000)).

The Plaintiff disputes Caterpillar's assertions and specifically takes issue with Araiza's March Affidavit [ECF No. 36-3] to which Caterpillar points in part as evidence of the reasons for the Plaintiff's termination. The Plaintiff argues that the affidavit is a "sham" because it has

different content than the April Affidavit that Araiza executed for an administrative proceeding.[7] (Pl. Resp. Ex. 2, ECF No. 39-2). However, on the actual point of contention (the reasons for the Plaintiff's termination), both Affidavits make clear that it was the Plaintiff's failure to wear the appropriate PPE and his poor performance that lead to his termination. (Pl. Resp. Ex. 3, ECF No. 39-3 ("Based on Mr. Vasquez's failure to wear his required safety equipment . . . and other factors relating to his poor job performance, Caterpillar Logistics decided it no longer wanted Mr. Vasquez to work at the Warehouse."); Cat. Br. Ex. 3, ECF No. 36-3 ("We made the decision to end Vasquez's assignment because he violated Caterpillar's PPE policy, did not respond well to corrective feedback, had low productivity, and he had poor quality.").)

Other than asserting his own opinion, the Plaintiff has offered no evidence to show that he was meeting Caterpillar's legitimate expectations. "[A] plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions." *Ost v. W. Suburban Travelers Limousine, Inc*., 88 F.3d 435, 441 (7th Cir. 1996). In contrast, there is admissible evidence in the record to support Caterpillar's assertions regarding the adequacy of the Plaintiff's performance, e.g., the February 17, 2015, error record and the February 17, 2015, emails. Although the Plaintiff disputes the veracity of this evidence, claiming forgery and falsification (Pl. Supp. 4–5),

---

[7] Although not clear from his briefing, it seems that the Plaintiff argues that Araiza's April 10, 2017, affidavit (before the ALJ) did not contain all of the statements from the Araiza email on February 17, 2015, at 9:42 P.M. (Pl. Resp. Ex. 2, ECF No. 39-2.) It seems that the point of this argument is to show that the Defendants are engaging in differing legal strategies and positions in federal court and in administrative proceedings and that the Court should hold them to one position or the other. However, the Seventh Circuit "declines to bind . . . defendants to the positions they initially assert in state administrative proceedings by rendering any different position a *per se* pretext for summary judgment purposes in subsequent proceedings." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 374 (7th Cir. 1992). *See also Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir. 2001) ("Here, [the defendant] merely supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote [the plaintiff] nor are any of its reasons inconsistent or conflicting.").

he has submitted no evidence to support such allegations other than his own speculation. Thus, even construing all facts in the Plaintiff's favor, there is no evidence from which a reasonable trier of fact could find that these records were forged or that the Plaintiff was, in fact, meeting his employer's legitimate expectations.

Araiza and Ropp were the two Caterpillar employees responsible for the decision to terminate the Plaintiff. But, the Plaintiff does not accuse either of doing anything specifically discriminatory; he simply disputes Araiza's evaluation of the Plaintiff's performance. The relevant inquiry is whether Araiza and Ropp based their decision to end the Plaintiff's assignment on the Plaintiff's race, not whether they correctly determined that the Plaintiff was a poor performer. The Plaintiff's opinion with respect to his performance, even if true in all respects, is insufficient to establish pretext because whether Araiza and Ropp's decision was objective, wise, fair, or even correct is not relevant. *See Harley v. Wis. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997) ("Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless."); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir. 1987) (noting "[i]t is easy to confuse 'pretext for discrimination' with 'pretext' in the more common sense (meaning any fabricated explanation for an action), and to confound even this watery use of 'pretext' with a mistake or irregularity"). The Plaintiff's argument that there is not enough evidence to conclude that he had a history of unproductivity (Pl. Resp. Br. Ex. 2, ECF No. 39-2) thus misses the mark. The Court is not a "super personnel department that reexamines an entity's business decision and reviews the propriety of the decision." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). Caterpillar does not need to prove that the Plaintiff actually was unproductive; it has to prove only that it believed the Plaintiff was unproductive.

Moreover, to establish pretext, the Plaintiff must show not only that Caterpillar's reasons for his termination were false, but also that discrimination was the actual reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("But a reason cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original)); *Reeves*, 530 U.S. at 146 ("proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct" (internal citation omitted)).

At best, the Plaintiff can show that the Defendants' assertion that he was not wearing the appropriate PPE was false based on the date on the off-boarding checklist, which the Defendants told the Plaintiff was a clerical error. However, he still must show that the *actual* reason for his termination was racial animus. The Plaintiff has produced no evidence of such animus other than his own speculative testimony. Moreover, he has produced no evidence that Caterpillar did not honestly believe that the Plaintiff performed poorly, including by having mispicks that ranked him as the fourth worst in the entire operation or being argumentative with his supervisors. *See Simpson v. Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 798 (7th Cir. 2015) (finding that "[the plaintiff] would have to raise an issue as to pretext for each proffered concern to withstand summary judgment"); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) ("[W]hen a defendant has offered multiple nondiscriminatory reasons for its . . . decision, showing that one of these reasons is pretextual is not enough . . . ."). There is simply no evidence on the record from which a reasonable trier of fact could conclude that Caterpillar's stated reasons for termination were a pretext for race discrimination.

Because the Plaintiff has not presented evidence that would create a triable issue of fact as to whether an adverse action was taken against him on account of his race, Caterpillar is

entitled to judgment as a matter of law on the Plaintiff's claim for racial discrimination under Title VII.

**B.     Sex Discrimination Under Title VII**

"The scope of a federal employment complaint is limited by the scope of the plaintiff's EEOC charge." *Holmes v. Cty. of Cook*, No. 03 C 4772, 2006 WL 208706, at *7 (N.D. Ill. Jan. 24, 2006) (internal citations omitted); *see also Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 527 (7th Cir. 2003); *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1991). The Plaintiff "may not complain to the EEOC only of certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *See Holmes*, 2006 WL 208706, at *20 (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). There is no dispute that the Plaintiff did not file a sex discrimination charge with the EEOC. Therefore, he cannot, as a matter of law, now charge Caterpillar with sex discrimination in federal court. Thus, the Court will grant summary judgment as to the Plaintiff's Title VII sex discrimination claim.

**C.     Race Discrimination Under § 1981**

"Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race or national origin." *Tank*, 758 F.3d at 805 (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006)). Section 1981 can be violated only by purposeful discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Section 1981 requires a "but for" causation analysis. Where a plaintiff alleges that race was only one factor in an adverse employment action, s/he can find no relief under § 1981. *Smith*

*v. Wilson*, 705 F.3d 674 (7th Cir. 2013) ("[W]e cannot import the authorization of partial 'motivating factor' relief found in § 2000e–2(m) into entirely different statutes" including § 1981 because "[a]bsent explicit statutory authorization . . . the district courts are powerless to give such relief.") (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010)). *See also Serafinn v. Local 722, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 597 F.3d 908, 915 (7th Cir. 2010) ("Mixed-motive theories of liability are always improper in suits brought under statutes without language comparable to the Civil Rights Act's authorization of claims that an improper consideration was "*a motivating factor*" for the contested action." (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 n.3 (1993)) (emphasis in original). Thus, if there is a "mixed motive" for an adverse employment action, i.e., the adverse action would have occurred even without the allegedly discriminatory reason, that reason cannot be a "but for" cause of the adverse action. A plaintiff who alleges additional, non-racial motives for an adverse employment action engages in a mixed-motive allegation. Here, the Plaintiff argues that he was terminated for a variety of unlawful reasons, including race, age, sex, and retaliation.[8] Therefore, because the Plaintiff alleges a mixed-motive for his termination, his § 1981 claims against both of the Defendants and Caterpillar must fail as a matter of law.

Even if the Plaintiff's mixed motive allegations were sufficient to bring a claim under § 1981, a reasonable trier of fact still could not conclude that either of the Defendants discriminated against him in violation of the statute. "[T]he same analysis applies to theories of

---

[8] The Plaintiff's claims for unlawful retaliation were never asserted in his Complaint, but rather, were asserted only in the EEOC Charge and his Summary Judgment briefing. However, throughout his briefing, the Plaintiff vigorously contends that both his race and his age contributed to the decision to terminate him. In the Plaintiff's deposition, when asked what his "final answer" was as to why he was terminated—whether it was to save Bushor's job, race, age, or retaliation—the Plaintiff responded: "It was an entirety of those influences and those conditions that caused me to make the charge of race, age, color, and eventually, retaliation." (Vasquez Dep. 211:7–15.)

liability whether under Title VII or § 1981." *Reyes v. Outdoor Detail, Inc.*, 1:15-CV-86 2017 WL 495594 (N.D. Ind. Feb. 6, 2017) (citing *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (citations omitted)). As discussed in detail above, the Plaintiff has proffered no evidence from which a reasonable trier of fact could conclude that Caterpillar discriminated against the Plaintiff on account of his race. His claim against EA fails for similar reasons: he has no evidence of racially discriminatory remarks from any EA employee; he has no evidence that EA treated a similarly situated employee outside of the Plaintiff's protected class differently (nor has he even identified a similarly situated employee); and he has no evidence other than his own statements that EA's documentation was false or that the reasons for his discharge were pretextual. The Plaintiff argues that "EA cannot give a plausible non discriminatory [reason] why the offboarding checklist would indicate that the Plaintiff had returned his pass key and time punch card" on February 16, 2015. (Pl. Resp. Br. 1.) But, this does not change the reasons cited for his termination or show that EA did not honestly believe these were Caterpillar's true reasons. Nor, the Plaintiff argues, can EA "provide a non-discriminatory reason for why on either the 16th or the 17th Feb 2015 the Plaintiff would not be notified that he had been fired by either [EA] [or] Caterpillar." The Plaintiff cites *Hyman v. K & D Resources*, Arb. No. 09076, ALJ No. 200-SOX-20 (Mar. 31, 2010), in support of his allegation that such a delay demonstrates pretext. However, *Hyman* is an administrative decision regarding a retaliation claim in which the Plaintiff was assured that he would be returned to his position and that he would be compensated for wrongful termination, which caused him to miss the ninety-day administrative filing deadline. *Hyman*, ALJ No. 200-SOX-20 at 8. Further, the issue in *Hyman* was not whether the Plaintiff had been timely informed of his termination; there was no disagreement as to the date of termination. Rather, the issue was whether he had been induced to

forgo his right to complain to the Department of Labor. *Id.* at 6. There is no indication, or even argument, that the Defendants in this case induced the plaintiff to forgo his right to complain and be heard by an ALJ.

Moreover, it is not even clear that the Plaintiff suffered an adverse action, within the meaning of the statute, by EA. Where a plaintiff does not present evidence of participation in the underlying termination decision, the Court is not required to engage in the burden-shifting analysis typically used in employment discrimination cases. *Garrett-Greer v. Key Staff Source, Inc.*, No. 1:08-CV-229, 2010 WL 1848898, at *2 (N.D. Miss. 2010) (Where a plaintiff fails to offer any evidence that his employer participated in the decision to terminate him, summary judgment is appropriate on a § 1981 claim). The Plaintiff admitted that he has no evidence that EA participated in Caterpillar's decision to terminate his assignment on February 18, 2015.[9] (Vasquez Dep. 189:19–25.) Thus, the Plaintiff relies only on speculation, which is not sufficient to survive summary judgment. *See Chism v. Con-Way Freight, Inc.*, No. 3:08-CV-387, 2009 WL 3111274, at *20 (N.D. Ind. Sept. 24, 2009) (failing to prove "intentional discrimination *by the decisionmaker*" fatal to summary judgment argument (emphasis in original)).

---

[9] Although not clear from his briefing, the Plaintiff appears to dispute EA's assertion that he "understood when he accepted the assignment at Caterpillar that EA Staffing could not control the length of his assignment." (EA Br. 3.) It does not appear that he disputes the fact itself, but rather argues that there is precedent showing that a misrepresentation to an employee about his job prospects is a sufficient pretext if the real reason for the adverse action is discriminatory. Neither of the cases to which he cites are precedential or even relevant as neither of them relate to misrepresentations as to the *reason* for the adverse employment action. The first decision to which the Plaintiff cites is *Hyman v. K & D Resources*, Arb. No. 09076, ALJ No. 200-SOX-20 (Mar. 31, 2010). *Hyman* is an administrative decision by the U.S. Department of Labor and not binding on this Court. The second decision is *Bonham v. Dresser Industries*, 569 F.2d 187 (3d Cir. 1977). In *Bonham*, the Third Circuit considered the effect of an employer's misrepresentation as to the date of termination when the misrepresentation caused the claimant to miss his filing deadline. Thus, not only is this case not binding, it is also not relevant or otherwise on point.

**D.      Age Discrimination Under the ADEA**

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Comm's Servs., Inc.*, 574 F.3d 447, 4752 (7th Cir. 2009). In order to establish an ADEA violation, "an employee must show that age actually motivated the adverse employment action. Put differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013). As with race discrimination, a plaintiff suing under the ADEA may establish discrimination directly or indirectly, the latter through the approach used in *McDonnell Douglas. Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "[W]hether a plaintiff proceeds under the direct or indirect method of proof, the ultimate standard is the same; the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for his membership in a protected class." *Cerutti*, 349 F.3d at 1061–62; *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that in ADEA disparate treatment cases, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but for' cause of the challenged employer decision"); *Reeves*, 530 U.S. at 140 (age must have "had a determinative influence on the outcome").

"The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180. The Plaintiff's claim against Defendant Caterpillar for age discrimination under the ADEA thus fails for the same reason that his charge of discrimination under § 1981 fails. If there is a mixed-motive for an adverse employment action, as the Plaintiff argues, age cannot be the "but for" cause of the Plaintiff's

termination. *See, e.g.*, *Graber v. Mad Brewer, Inc.*, 773 F. Supp. 2d 765, 787 (N.D. Ind. 2011) (citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1337–38 (8th Cir. 1996) for the court's finding that "a plaintiff who claimed termination due to age discrimination defeated his own case when, to prove that the employer's stated reason was false, he presented evidence that the true reason he was fired was that he had discovered SEC violations that his company was attempting to keep concealed"). Therefore, as a matter of law, the Plaintiff's claim of age discrimination in violation of the ADEA must fail.

Even if the "but for" test were inapplicable, the Plaintiff's claim for age discrimination under Title VII standards would still fail. The Plaintiff alleges that Bushor commented that the Plaintiff would probably remember about doo-wop during a conversation about rock and roll music because he was old. Caterpillar does not deny this occurrence. But, this comment does not demonstrate discrimination because the Plaintiff has not demonstrated that Bushor was involved in the decision to terminate the Plaintiff; rather, the evidence of record demonstrates that Bushor was not involved in that decision. (Cat. Br. 6.) *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("What our cases hold, we said, that if someone not involved in the decisionmaking in a plaintiff's case expressed discriminatory feelings, that is not evidence that the decision was discriminatory."); *Dandy*, 388 F.3d at 273 ("The comments which were made during the relevant period . . . do not aid [the plaintiff] because they were made by co-equals with no influence over the ultimate decisionmaker."); *Dickerson v. Walgreen Co.*, 345 F. App'x. 178, 179 (7th Cir. 2009) (evidence insufficient where "at most, it showed discrimination only by someone who was not the decisionmaker").[10]

---

[10] The Court notes, therefore, that accusations that non-decisionmakers failed to "go to bat" for the Plaintiff or were in the know or privy to the conversations surrounding the Plaintiff's termination are meritless.

Moreover, Bushor's comment was not made in reference to the Plaintiff's termination and thus, cannot be evidence of discrimination. *See Coney v. Promotions Unlimited Corp.*, 114 F. App'x 235, 239 (7th Cir. 2004) (even had the Plaintiff demonstrated that an employee participated in the decision to terminate her, her "claim would still fail because [the employee's] angry statements were not made in reference to her termination"); *Gorence*, 242 F.3d at 762 (finding that "there must be a real link between the [comment] and an adverse employment action").

The Plaintiff's claims that his performance met Caterpillar's legitimate expectations fare no better as evidence for his ADEA complaint. "Even if the performance concern was a complete mistake, even if [the plaintiff] was the best possible person for the job, so long as [the employer] honestly believed he was not, its business judgment will not be second-guessed by federal courts applying the ADEA." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992).

The Plaintiff also alleges that two other employees, ages forty-five and twenty-three, were timely trained where he was not. (Cat. Resp. Ex. 1, ECF No. 36-1 (EEOC Compl. 1).) But, the Plaintiff does not identify these employees and has not presented evidence that they were similarly situated as to qualifications or performance. No reasonable trier of fact could find that age was a motivating factor in the Plaintiff's termination, much less that it was the but-for cause. Thus, Caterpillar is entitled to judgment as a matter of law on the Plaintiff's claim for age discrimination under the ADEA.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant EA's Motion for Summary Judgment, GRANTS Defendant Caterpillar's Motion for Summary Judgment on all counts, and DENIES as MOOT Defendant EA's Motions to Strike. Because the Court is granting summary judgment, the Court also DENIES as MOOT all remaining pending motions.

SO ORDERED on October 20, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT